914 F.2d 147
 STATE OF SOUTH DAKOTA; State of North Dakota; State of
Montana; Governor George A. Sinner, ex rel. the Citizens of
North Dakota; Governor George S. Mickelson, ex rel. the
Citizens of South Dakota; and Governor Stan Stephens, ex
rel. the Citizens of Montana, Appellees,
v.
Colonel Donald E. HAZEN, District Engineer, Omaha District,
United States Corps of Engineers; Colonel Eugene S.
Witherspoon, Division Engineer, Missouri River Division,
Corps of Engineers; Lt. General Henry J. Hatch, Chief of
Engineers, Corps of Engineers; Robert W. Page, Assistant
Secretary of the Army; and Michael P.W. Stone, Secretary of
the Army, Department of the Army, Appellants.
 No. 90-1750.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1990.
Decided Sept. 12, 1990.
 
 John T. Stahr, Washington, D.C., for appellants.
 William J. Janklow, Sioux Falls, S.D., for State of S.D.
 Nicholas Spaeth, Bismarck, N.D., for State of N.D.
 Before FAGG, BOWMAN and WOLLMAN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 The United States Army Corps of Engineers appeals an order of the District Court enjoining the Corps, until June 1, 1990, from releasing water from Lake Oahe reservoir, located in South Dakota, into the Missouri River at a rate greater than that at which water is flowing into the reservoir. The case originally came before this Court on an emergency motion for stay pending appeal of the preliminary injunction entered by the District Court on May 9, 1990. We granted the stay on May 11, 1990, and heard oral argument of the appeal on an expedited basis on the afternoon of May 16, 1990. On May 17, 1990, we entered an order, without a concurrent opinion, reversing the District Court and specifically holding that the Corps's actions were not arbitrary and capricious, the standard of review under the Administrative Procedure Act (APA). 5 U.S.C. Sec. 706(2)(A) (1988). We recognized that time constraints would not permit a considered and thoughtful opinion on the complicated and important issues raised by the parties to accompany the order, but we advised the parties that an opinion would follow. In our order, we expressed our reservations that the agency action at issue was judicially reviewable and, on May 23, 1990, we requested supplemental briefs on the jurisdictional issue to be filed by June 18, 1990. We have received these supplemental briefs and have considered them.
 
 
 2
 After all this, we conclude that the case is now moot, and we decline to issue what would amount to an advisory opinion on the jurisdictional question.
 
 
 3
 Lake Oahe, a main stem reservoir on the Missouri River, was created as a project of the Flood Control Act of 1944.[1] Congress charged the Secretary of the Army with the duty to promulgate "regulations for the use of storage allocated for flood control or navigation at all reservoirs constructed wholly or in part with Federal funds provided on the basis of such purposes, and the operation of any such project shall be in accordance with such regulations." 33 U.S.C. Sec. 709 (1988). The Secretary's regulations provided that "[w]ater control plans developed for specific projects and reservoir systems will be clearly documented in appropriate water control manuals." 33 C.F.R. Sec. 222.7(f)(3) (1989).
 
 
 4
 The dispute here arose this spring when the Corps was discharding water from Lake Oahe into the Missouri River at a rate of 30,000 cubic feet per second (cfs). The Upper Missouri River Basin states of North and South Dakota and Montana sought an injunction in the District Court to reduce releases from Oahe until June 1, 1990. They contended that continued drought in the area, combined with the Corps' releases from Oahe, would prevent the successful spawn of sport and forage fish in the lake, since the rate of inflow into the reservoir was only 22,000 cfs at that time. For its part, the Corps was concerned that if the level of the Missouri River downstream from Oahe was not maintained by way of releases from the reservoir, downstream navigation including barge traffic necessarily would be halted. Such a delay in the navigation season would prevent the movement of fertilizer and would otherwise harm agriculture in the Lower Basin states of Iowa, Kansas, Missouri, and Nebraska. Moreover, the Corps argued, reducing discharges from Oahe, even temporarily, would stop navigation for the entire summer. The Corps contended that increased discharges from Oahe later in the summer after the spawning season would flood the downstream nests of two endangered species of birds, which would build nests near the edge of the Missouri River while the water level was low. Increased releases from the reservoir after June 1 would inundate those nests in violation of the Endangered Species Act, and so the navigation season on the Missouri River would effectively be ended for the year if the District Court enjoined the Corps from releasing water from Oahe in May. The Corps also expressed concern for the generation of electric power and other downstream uses.
 
 
 5
 The District Court, articulating in its order its "very serious doubts about [its] power" to issue an injunction against the Corps, South Dakota v. Hazen, No. A1-90-097, at 3 (D.N.D. May 9, 1990) (order granting injunction), nevertheless did so, finding it arbitrary and capricious for the Corps to favor one use of water over another. We stayed the order until we could hear oral argument on the case.
 
 
 6
 In our May 17, 1990 order, we held that the Corps' actions in this matter were neither arbitrary nor capricious, if in fact those actions were reviewable at all. The Corps urges that its decision is not reviewable by the courts, except for bad faith or unconstitutionality, because there is no "law to apply" in either the statutes or the regulations. The only plausible source of law in this situation is the Corps' own Missouri River Main Stem Reservoir System Reservoir Regulation Manual (1979) (the Manual), a document the Corps says was intended only for internal use in meeting the goals set forth by Congress. The Corps therefore concludes that its actions regarding releases of water from Lake Oahe were "committed to agency discretion by law," 5 U.S.C. Sec. 701(a)(2) (1988), and thus are not subject to judicial review. The Corps also relies on our prior decision in Story v. Marsh, 732 F.2d 1375, 1381 (8th Cir.1984). The Upper Basin appellee states and the Lower Basin amici curiae states, on the other hand, contend that the Corps relies upon its Manual when managing the system and has purported to be bound by it. Thus, they say, even though the manual was not adopted as a regulation through the rulemaking procedure of the APA, it does provide law to apply. Moreover, the states argue, a finding of unreviewability would give the Corps unbridled discretion over Lake Oahe and other main stem reservoirs, a result Congress surely could not have intended.
 
 
 7
 This question is not free from doubt and there are weighty arguments on both sides. We agree, however, with the amici curiae suggestion that the case is moot and reserve for another day our opinion on the reviewability of Corps actions regarding water releases from the Missouri River reservoirs.
 
 
 8
 Although the parties have not raised the mootness question (only the amici curiae have done so), we nevertheless are constrained from addressing any issues presented by moot cases. Because a moot case is not a case or controversy within the meaning of Article III of the United States Constitution, North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971), the mootness question is jurisdictional. It is of no significance that the parties may desire a resolution of the issues a moot case presents. Kremens v. Bartley, 431 U.S. 119, 136, 97 S.Ct. 1709, 1718, 52 L.Ed.2d 184 (1977). The parties may not "by stipulation invoke the judicial power of the United States" to decide questions over which this Court has no jurisdiction. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 7-8, 98 S.Ct. 1554, 1559-60, 56 L.Ed.2d 30 (1978) (quoting Sosna v. Iowa, 419 U.S. 393, 398, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975)). We therefore must consider and rule upon the mootness question this case presents.
 
 
 9
 Initially, we note there is no reason that the prohibition on deciding moot cases should not apply when the issue is the reviewability of the agency action in question. If the case is no longer live, we must refrain not only from reaching its merits but also from ruling on our power to review the matter. Federal judicial power cannot be called upon to decide any issues in a moot case, even if they are collateral to the merits. See Fauconniere Mfg. v. Secretary of Defense, 794 F.2d 350, 352 (8th Cir.1986).
 
 
 10
 The District Court's preliminary injunction in this case (which we vacated on May 17, 1990) would have expired June 1, 1990. By on or about that date, the fish spawn about which the Upper Basin states were concerned was completed--successfully or unsuccessfully. That date now is several months behind us, and thus, "the question sought to be adjudicated has been mooted by subsequent developments," Gilligan v. Morgan, 413 U.S. 1, 9, 93 S.Ct. 2440, 2445, 37 L.Ed.2d 407 (1973) (quoting Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968)), that is, the passage of time and the conclusion of the spawning season in Lake Oahe. Regardless of the result, a decision on the power of the federal courts to review the Corps' actions would afford the Upper Basin states no specific relief (as the fish spawn threatened by the Corps' actions is long since over, and as we already have held that even if we have jurisdiction to review the Corps' actions, those actions were not arbitrary and capricious), and would provide the Corps no additional relief (as our May 17 order already reversed the grant of the injunction against the Corps). See Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983). Were we now to issue an opinion deciding whether we have the authority to review the Corps' actions, we would be issuing an advisory opinion where nothing we might say would affect the rights of the parties in this case. See Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). In short, we would be issuing "an opinion advising what the law would be upon a hypothetical state of facts." Lewis v. Continental Bank Corp., --- U.S. ----, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990) (quoting Rice, 404 U.S. at 246, 92 S.Ct. at 404). It is of no consequence that the controversy was live at earlier stages in this case; it must be live when we decide the issues. 110 S.Ct. at 1253. While the parties may have an interest in the reviewability of similar Corps actions that may be taken in the future, our opinion on federal judicial power in such a situation must wait for the day when such actions are challenged.
 
 
 11
 We are mindful of the exception to the mootness doctrine for cases "capable of repetition, yet evading review," first enunciated by the Supreme Court in Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). See Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974) (short-term governmental action challenged by adversely affected party calls for analysis of applicability of exception). We must find the presence of two factors before the exception may be applied: (1) the Corps' action must be "in its duration too short to be fully litigated prior to its cessation or expiration," and (2) there must be a "reasonable expectation" that the appellee states will be "subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975).
 
 
 12
 Neither of these factors is present here. As to the first factor, this case was fully litigated in the District Court and in this Court before the end of the spawning season in late May or early June, even though the Upper Basin states did not commence this lawsuit until May 4, 1990. There is no apparent reason why similar future action by the Corps could not be fully litigated before its cessation or expiration. Indeed, the need in this case for a preliminary injunction, an emergency stay, and an expedited appeal was created by the state appellees' failure to file their lawsuit sooner--even though the states knew that they were experiencing drought conditions in the area (and had been for several years) and a low water level in Lake Oahe; that the Corps, on an ongoing basis, was releasing water from the reservoir for downstream use; and that the fish spawn at issue takes place at approximately the same time each year. If drought persists and the Corps continues to release water from Oahe, there will be sufficient notice to the Upper Basin states to file suit and sufficient time to fully litigate the case before the spawning season is past.
 
 
 13
 As to the second Weinstein factor, although the Upper Basin states and the Corps may be parties to the same sort of dispute in some future spring, "a mere physical or theoretical possibility," is insufficient to meet the Weinstein test. Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). Considering the uncertainty as to whether drought will persist in the Upper Basin states and as to the Corps' future actions if it does, we cannot say there is a "reasonable expectation" that the Upper Basin states will find future releases from Lake Oahe objectionable. In this connection, we note that the Corps presently is revising the 1979 Manual with due consideration to comments from both the Upper and Lower Basin states. Moreover, all these states are making efforts through political channels to discuss and to advance their respective needs as they relate to the Oahe reservoir. We thus do not believe that the possibility that the Upper Basin states will be challenging future Corps actions taken pursuant to the 1979 Manual--especially in view of the fact that the Manual is being revised--rises to the level of a concrete probability as required by the Weinstein line of cases.
 
 
 14
 In sum, we hold that the case is moot and not within the exception for cases "capable of repetition, yet evading review." Our May 17, 1990, order without opinion reversed the District Court order and vacated the preliminary injunction. Because the case is moot, we now vacate our order and remand to the District Court with instructions that its order be vacated and the case dismissed. See United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).
 
 
 
 [1]
 For a history of the Oahe project, see ETSI Pipeline Project v. Missouri, 484 U.S. 495, 499-502, 108 S.Ct. 805, 808-810, 98 L.Ed.2d 898 (1988)