**NEIGHBORHOOD TRANSPORTATION NETWORK, INC., a Minnesota nonprofit corporation; State of Minnesota, by Neighborhood Transportation Network, Inc.; Peter Bull; Kim Dewey; Scott Dibble; Michael Larson; John McIntire; S. Dore Mead; John Nylen; Michael O'Neal; Gerry Sell, each individually and on behalf of the State of Minnesota, Plaintiffs–Appellants,**

v.

**Federico F. PENA, Secretary of the United States Department of Transportation, individually and in his official capacity; Charles E. Foslien, Administrator, Federal Highway Administration, individually and in his official capacity; James Denn, Commissioner of the Minnesota Department of Transportation, individually and in his official capacity, Defendants–Appellees,**

**Metropolitan Council, and its members, individually and in their official capacity, Defendants,**

**City of Minneapolis, Amicus Curiae.**

No. 94–1192.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1994.

Decided Dec. 15, 1994.

Bruce Rasmussen, Minneapolis, MN, argued (Scott R. Carlson, on the brief), for appellant.

Sherry A. Enzler, Asst. Atty. Gen., St. Paul, MN, argued (Hubert Humphrey III, Donald J. Mueting, David L. Lillehaug and Friedrich A.P. Siekert, on the brief), for appellee.

Before MAGILL, Circuit Judge, CAMPBELL, Senior Circuit Judge,* and LOKEN, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

This appeal raises issues relating to two highway construction projects on a stretch of Interstate 35W ("I–35W") in and near Minneapolis. Plaintiffs Neighborhood Transportation Network, Inc. et al. sued Federico Pena, Secretary of the U.S. Department of Transportation, et al. seeking to enjoin construction on the smaller and most imminent of the two projects, alleging a violation of the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq. ("NEPA") and the Minnesota Environmental Policy Act, Minn. Stat. §§ 116D.01 et seq. ("MEPA"). The district court denied a preliminary injunction and plaintiffs appealed. Finding the case to have since become moot, we now vacate the judgment below and remand to district court

---

* The HONORABLE LEVIN H. CAMPBELL, Senior United States Circuit Judge for the First Circuit, sitting by designation.

with directions to dismiss the complaint as moot.

## I.

NEPA is a procedural statute that requires federal agencies to gather and disseminate certain information before taking any actions that may affect the environment. Pursuant to NEPA, an agency must prepare an environmental impact statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C) (1992). Regulations specify what kinds of federal actions clearly require an EIS and which clearly do not. 40 C.F.R. §§ 1500 et seq. (1992). For federal actions that are not in either category, an agency must prepare an environmental assessment ("EA") to determine whether an EIS is required. 42 U.S.C. § 4332(2)(E). If the agency concludes that an EIS is not required, it will issue a "finding of no significant impact" ("FONSI"), and the action may proceed. Otherwise, it will begin the EIS process. Procedures under MEPA are in large measure similar to, and coextensive with, those under NEPA.

In the present suit, plaintiffs assert that defendants did not comply with the requirements of NEPA and MEPA before proceeding to construct a six-mile upgrade of I–35W. This six-mile upgrade is called the "3HOV project." It sits within the 18–mile section of I–35W slated to be redesigned and reconstructed eventually under the much larger "35W project." The latter, estimated to cost $1 billion, is scheduled to begin in 1998 and end 10 to 15 years later. Still in its planning stages, the 35W project was subjected to NEPA review beginning in 1986, and a draft environmental impact statement was issued in 1992. A final environmental impact statement is expected to issue in December of 1994.

The 3HOV project, targeted in the present suit, has been estimated to cost only $15.5 million. Its objectives were to add a high-occupancy-vehicle ("HOV") lane, as well as to upgrade other lanes, in a six-mile stretch of I–35W. Construction on the 3HOV project began soon after the district court denied the preliminary injunction that plaintiffs here sought. The additional lanes, once completed, were expected to last 10 to 15 years, until the 35W project could be finished. An EA issued in early 1993 relative to the 3HOV project. Soon thereafter, in April of 1993, the Federal Highway Administration ("FHWA") issued a "finding of no significant impact" and the Minnesota Department of Transportation ("MnDOT") issued a "negative declaration," allowing construction on the 3HOV project to go forward right away.

Shortly afterwards, plaintiffs filed suit in the district court in May of 1993 seeking to enjoin construction on the 3HOV project until an EIS was completed for the 35W project.[1] Plaintiffs argued that the 3HOV project was simply a sub-project within the 35W project and thus had to await the completion of the 35W project's EIS. Plaintiffs further contended that by treating the 3HOV project as a separate project and conducting a separate EA, defendants were attempting to circumvent the more rigorous requirements of an EIS and prematurely commence construction on the first phase of the 35W project.

The district court refused to issue the injunction, finding that plaintiffs had failed to show a sufficient likelihood of success on the merits. The district court determined that the 3HOV project was an independent project, not a sub-project within the larger 35W project. The court found that the 3HOV project served an independent purpose, had logical termini, did not preclude consideration of alternative construction projects, and did not irretrievably commit federal funds. Accordingly, the district court held that construction on the 3HOV project did not have to await completion of the 35W project EIS. The district court found that the EA performed for the 3HOV project was sufficient to satisfy the requirements of NEPA and

---

1. In June of 1993, the FHWA rescinded its approval of the 3HOV project pending further environmental review. After undertaking such review, a revised EA was issued. Then, in late September and early October of 1993, both FHWA and MnDOT granted approval once again. Plaintiffs withdrew this action while approval was rescinded and then reinstated it when approval was again granted.

MEPA. As noted, once the district court had denied the preliminary injunction, construction on the 3HOV project began.

Plaintiffs appealed, arguing that the district court abused its discretion in refusing to preliminarily enjoin construction. While this appeal was pending and before oral argument, construction on the 3HOV project was completed and the additional lanes were opened to traffic. This court subsequently notified the parties that completion of the 3HOV project had raised an issue of mootness. We asked the parties to address this issue at oral argument.

## II.

 We hold that this case is now moot. Federal courts are courts of limited jurisdiction and can only hear actual "cases or controversies" as defined under Article III of the Constitution. The "case or controversy" requirement applies at all stages of review. When a case on appeal no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it. *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). In their complaint, plaintiffs sought to enjoin construction on the 3HOV project. Construction on the 3HOV project is now finished. An order enjoining defendants from further construction on the 3HOV project would serve no purpose and afford plaintiffs no relief.[2] As the case no longer presents a live controversy, the case is moot. *Iron Cloud v. Sullivan,* 984 F.2d 241, 243 (8th Cir.1993); *State of South Dakota v. Hazen,* 914 F.2d 147, 150 (8th Cir.1990).

 Plaintiffs argue that this case falls within the exception to the mootness doctrine for cases that are "capable of repetition yet evading review." *Southern Pac. Terminal Co. v. I.C.C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). In order to fall within this exception (1) there must be a reasonable expectation that the same complaining party[3] would be subjected to the same action again (the "capable of repetition" prong); and (2) the action must be in duration too short to be fully litigated prior to cessation or expiration (the "evading review" prong). *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975).

While the 3HOV project is now complete, plaintiffs contend that defendants may in the future attempt to split off similar subprojects from the 35W project and thereby circumvent the 35W project's EIS. As examples of the type of sub-projects that may arise in the future, plaintiffs point to two other sub-projects: first, the addition of extra lanes to trunk highway 121, which has already been completed but which plaintiffs did not challenge; and second, the planned widening of the Minnehaha Creek Bridge, which had originally been scheduled to commence before issuance of the 35W project EIS but has now been postponed until after the issuance. Although neither sub-project will likely give rise to a law suit (since one has been completed and the other postponed,) a favorable decision on the merits in this case would arguably prevent similar such sub-projects from being commenced in the future, prior to completion of the 35W project's EIS.

 Putting aside whether this is a case that is "capable of repetition,"[4] it has not

---

2. Plaintiffs have not asserted any claim for damages. Plaintiffs have asserted a claim for attorneys' fees. *See* 28 U.S.C. § 2412(b). However, a claim for attorneys' fees is generally not sufficient to save a case from being moot. *See, e.g., Bishop v. Committee on Professional Ethics and Conduct,* 686 F.2d 1278, 1290 (8th Cir.1982).

3. *But cf., Sims v. Florida Dept. of Highway Safety,* 862 F.2d 1449, 1459–60 (11th Cir.) (En Banc) (suggesting that "same complaining party" requirement may not be necessary), *cert. denied,* 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989); *Sims,* 862 F.2d at 1464 (Tjoflat, J., Dissenting).

4. At oral argument, defense counsel indicated that an EIS for the 35W project is expected to issue in December of 1994. In their complaint, plaintiffs sought to enjoin defendants from further construction until an EIS for the 35W project is "complete." If by "complete" plaintiffs meant "filed" or "issued," then the case is almost certainly not "capable of repetition," since there is no reasonable expectation that a case raising the same issues will arise within the next month before issuance of the EIS. If by "complete" plaintiffs meant "approved," then there is more time during which such a case could arise, though it is unclear whether there is a "reasonable expectation" that such a case could arise.

been shown to be of the type that necessarily "evades review" on appeal. It is true that this particular case was mooted before this appeal could be addressed. It does not follow, however, that similar future cases will evade review. Future projects may be sufficiently time-consuming so as to permit appellate review. In addition, should a similar case arise in the future, plaintiffs could seek an injunction pending review of any denial of a preliminary injunction. Fed.R.Civ.P. 62(c). Plaintiffs did not seek an injunction pending this appeal. *See American Horse Protection Ass'n v. Watt,* 679 F.2d 150, 151 (9th Cir. 1982) ("Where prompt application for a stay pending appeal can preserve an issue for appeal, the issue is not one that will evade review."); *Headwaters, Inc. v. Bureau of Land Mgmt.,* 893 F.2d 1012, 1016 & n. 8 (9th Cir.1989) (same). While plaintiffs now suggest that the cost of a bond on appeal would have been prohibitive, this is mere speculation on the present record as none was sought. Because there has been no sufficient showing that cases such as this one will "evade review," we hold that this case, including this appeal, does not fall within that exception to the mootness doctrine.

### III.

We vacate the district court's decision and remand to the district court with directions to dismiss this case as moot. *See United States v. Munsingwear,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950); *Nomi v. Regents for the Univ. of Minn.,* 5 F.3d 332, 334 (8th Cir.1993).