# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1332

_____

| | | |
|---|---|---|
| State of Missouri, ex rel., Jeremiah W. "Jay" Nixon; Mel Carnahan, Governor of the State of Missouri, | * * * * | |
| Appellants, | * * | |
| Mo-Ark Association, | * * | |
| Plaintiff, | * * | |
| v. | * * | Appeal from the United States District Court for the Western District of Missouri. |
| Richard W. Craig; H. Martin Lancaster; Togo P. West; Robert Griffin, Brigadier General; and Mike Meleuners, Colonel, | * * * * * | |
| Appellees. | * * | |
| _____ | * * | |
| Montana; North Dakota; South Dakota, | * * * | |
| Amicus Curiae. | * | |

_____

Submitted: September 22, 1998
Filed: December 16, 1998

_____

Before HANSEN, BRIGHT, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

Missouri filed this suit pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706 (1994). Missouri alleges that the United States Army Corps of Engineers' (the Corps) Annual Operating Plans (AOPs) for 1995-96 and 1996-97 violate the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321-4370d (1994). Missouri contends that the AOPs "drastically changed" the way the Corps manages the Missouri River without first taking certain regulatory actions such as, for example, preparing an environmental impact statement. Because the navigation seasons covered by the 1995-96 and 1996-97 AOPs are over, and this case does not fit within the exception for cases capable of repetition, yet evading review, we hold that the case is now moot.

I.

The Corps built and now operates six dams on the Missouri River for flood control, navigation, and other statutorily defined purposes. Prior to the dam system, the Missouri River experienced large fluctuations in stream flow. According to Missouri, "before the dams were built, maximum and minimum average flows at Kansas City [were] 301,000 cubic feet per second (cfs) in June and only 5,000 cfs in January." (Appellant Br. at 4.) The six dams comprise a main stem reservoir system that modulates the Missouri River's stream flow. In a typical year, the reservoir levels rise in the spring and early summer, and then fall during the late summer through the winter. When operated as an integrated system, the six dams have a combined capacity to store in the neighborhood of 75 million acre-feet (MAF) of water.

The Corps uses the Missouri River Master Water Control Manual (the Master Manual) as its guide for determining objectives and managing the main stem reservoir system. In particular, the Master Manual sets out navigation support objectives for the Missouri River system. The first manual was published in 1960, and the current Master Manual was published in 1979.

The commercial navigation season on the Missouri River runs from approximately April 1 through approximately December 1—an eight-month season. The season varies depending upon the amount of water available in the reservoir system. When the water supply is adequate, the season is extended several days into December. In drought years, however, the season may be shortened by several weeks. The Master Manual states that if system storage falls below 39 MAF on July 1, the navigation season should be shortened by two weeks. This 39 MAF level is the so-called "trigger point."

In addition to the Master Manual, the Corps prepares AOPs. According to the Corps, "AOPs do not establish the objectives for management of the Main Stem system; rather, they set forth the manner in which those objectives will be achieved under the particular circumstances of that year." (Appellee Br. at 4.) The AOPs for 1995-96 and 1996-97 lie at the heart of this dispute.

The 1995-96 and 1996-97 AOPs changed the July 1 trigger point from 39 MAF to 52 MAF. In other words, for the two years involved, a much larger amount of water had to be in storage on July 1 in order to avoid a two-week reduction in the navigation season. This increased the likelihood of a shortened season. According to Missouri's evidence, the adverse economic effects of a shortened navigation season downstream from the dams are not the only risks associated with the 52 MAF trigger point. Missouri contends, for example, that the resultant change in total system storage will adversely affect wetlands and reduce habitat for a species of federally protected shore birds between the dams. (Appellant Br. at 17.)

3

On March 12, 1996, the State of Missouri and the Mo-Ark Association[1] filed the present suit claiming that the Corps issued the 1995-96 AOP without a detailed environmental statement as required by the NEPA. They later amended the complaint to include the 1996-97 AOP. On the parties' cross-motions for summary judgment, the district court ruled in favor of the Corps.[2] Missouri appeals from this order.

## II.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990) (citing Deakins v. Monaghan, 484 U.S. 193, 199 (1988); Preiser v. Newkirk, 422 U.S. 395, 401 (1975)); see also South Dakota v. Hazen, 914 F.2d 147, 150 (8th Cir. 1990). "It is of no consequence that the controversy was live at earlier stages in this case; it must be live when we decide the issues." Hazen, 914 F.2d at 150 (citing Lewis, 494 U.S. at 477-78). "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." Arizonans for Official English v. Arizona, 117 S. Ct. 1055, 1069 n.22 (1997) (quotations and citations omitted).

A moot case calls into question Article III's case or controversy requirement; therefore, we must first "consider and rule upon the mootness question this case presents." Hazen, 914 F.2d at 149; cf. Steel Co. v. Citizens for a Better Env't, 118 S.

---

[1] Mo-Ark is a nonprofit association organized to promote various activities and objectives associated with the water resources within the Missouri River basin. Mo-Ark is not directly involved in this appeal.

[2] The district court denied the plaintiffs' motion as to the 1995-96 AOP as being moot in view of the 1996-97 AOP. Missouri v. Craig, No. 96-4086-CV-C-9 at 4 (W.D. Mo. Aug. 29, 1997) (order granting summary judgment).

Ct. 1003, 1012 (1998) (discussing the requirement that jurisdiction be established as a threshold matter).[3]  Further, if this case is indeed moot, we must refrain from reaching the merits because any opinion issued would be merely "advisory" and rest on hypothetical underpinnings.  Hazen, 914 F.2d at 150 (citing Lewis, 494 U.S. at 477).  With the foregoing principles in mind, we look to see which, if any, of Missouri's claims remain alive.

Each of Missouri's claims challenges Corps decisions, reflected in the 1995-96 and 1996-97 AOPs, that would shorten the navigation season by two weeks if the amount of water in the system's storage fell below 52 MAF on July 1.  It is undisputed that the navigation seasons covered by the 1995-96 and 1996-97 AOPs are over.  Moreover, it is undisputed that the Corps has adopted a 1997-98 AOP that no longer includes the 52 MAF trigger point.  Rather than directing a two-week adjustment of the navigation season, the 1997-98 plan provides for a flexible approach with "many possible combinations of potential adjustments that would result in the attainment of the current Master Manual operational objectives."  (1997-98 AOP at 116; see Amicus Add. at 1.)  In other words, whatever wrong, if any, there may have been, changed circumstances have deprived us of the ability to provide the requested remedy.  Therefore, it appears to us that the case is moot.  See Hazen, 914 F.2d at 150.

Our conclusion that this case is moot does not end our inquiry.  "We are mindful of the exception to the mootness doctrine for cases 'capable of repetition, yet evading review.'"  Id. (citing Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911)).  This exception applies only when the two so-called "Weinstein factors" exist.  In order to qualify under the first factor, "the Corps' action must be 'in its duration too short to

---

[3] The mootness doctrine is of such importance that "[i]t is the duty of counsel to bring to the federal tribunal's attention, 'without delay,' facts that may raise a question of mootness."  Arizonans for Official English, 117 S. Ct. at 1069 n.23 (citing Board of License Comm'rs of Tiverton v. Pastore, 469 U.S. 238, 240 (1985)).

be fully litigated prior to its cessation or expiration.'" Id. (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)). Under the second factor, "there must be a 'reasonable expectation' that [Missouri] will be 'subjected to the same action again.'" Id. Additionally, the Supreme Court has stated that the exception applies only in "exceptional situations," and only when both factors are "simultaneously present." Spencer v. Kemna, 118 S. Ct. 978, 988 (1998) (quoting Los Angeles v. Lyons, 461 U.S. 95, 109 (1983); Lewis, 494 U.S. at 481). For the reasons stated below, we find neither of these factors satisfied in this case.

As to the first Weinstein factor, we view our prior Hazen decision as being particularly instructive. In Hazen, several states in the upper Missouri River basin challenged a Corps decision to discharge water from Lake Oahe at a rate greater than inflow. The challengers argued that this change would harm the spawning season for several species of lake fish. See 914 F.2d at 148. Our court declared the case moot because the spawning season had ended before we could consider the merits of the controversy. Id. at 150. As to the first Weinstein factor, we found that "[t]here is no apparent reason why similar future action by the Corps could not be fully litigated before [the case became moot]." Id. at 150. Our court referred to the availability of judicial processes such as preliminary injunctions, emergency stays, and expedited appeals in reaching this decision. Id.

We see no reason why these same processes would not be available to Missouri if the need arises in the future. Moreover, in this case, Missouri chose not to seek expedited review and relief. Therefore, the fact that we could not reach the merits of Missouri's claims before this case became moot does not change our conclusion that the first Weinstein factor is inapplicable.

Even if there were doubts as to whether the wheels of justice turn as fast as Hazen suggests, those doubts would not alter our decision. We find the second Weinstein factor lacking in this case due to the changes reflected in the 1997-98 AOP.

"[A]lthough [Missouri] and the Corps may be parties to the same sort of dispute in [the future], 'a mere physical or theoretical possibility,' is insufficient to meet the <u>Weinstein</u> test." <u>Id.</u> at 151 (quoting <u>Murphy v. Hunt</u>, 455 U.S. 478, 482 (1982)). We take particular note of the fact that the 1997-98 AOP no longer requires a two-week reduction in the navigation season based on the 52 MAF trigger point. Thus, while Missouri may have an interest in future Corps actions that adversely affect the length of the navigation season, "our opinion . . . in such a situation must wait for the day when such actions are challenged." <u>Id.</u> at 150.

An issue lurking, but not directly involved in this appeal, is whether the Master Manual constitutes a binding rule or regulation. Missouri states that the criteria in § 9 of the Master Manual are "at the heart of this dispute," yet it rests its substantive arguments on the NEPA. (<u>See</u> Appellant Br. at 7, 10-12.) The Corps takes a contrary view as to the binding nature of the Master Manual. (Appellee Br. at 2.) We have not yet resolved this issue. <u>See</u> <u>Hazen</u>, 914 F.2d at 149. Because we conclude that this case is moot, we have no occasion to comment on whether the Master Manual is binding.

## III.

In sum, we hold that this case is moot and does not fall within the exception to the mootness doctrine for cases "capable of repetition, yet evading review." We vacate the district court's judgment and remand the case to the district court with instructions that it dismiss the case. <u>See</u> <u>United States v. Munsingwear</u>, 340 U.S. 36, 39 (1950) ("The established practice . . . in dealing with a civil case . . . which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.").

A true copy.

Attest:

            CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT