# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-2262

_____

National Right to Life Political Action          *
Committee; National Right to Life               *
Committee, Inc.; Amarie Natividad,          *
Treasurer of National Right to Life           *
Political Action Committee,                   *
   *
        Appellants,                       *
   *   Appeal from the United States
      v.                              *   District Court for the
   *   Western District of Missouri.
Robert F. Connor, in his official            *
capacity as Executive Director of the     *
Missouri Ethics Commission; Sandra      *
Donahue, in her official capacity as       *
Chair of the Missouri Ethics              *
Commission; James E. Spain, in his      *
official capacity as Vice-Chair of the     *
Missouri Ethics Commission; Philip      *
Conger, in his official capacity as       *
member of the Missouri Ethics          *
Commission; Pier C. Patterson, in his     *
official capacity as member of the        *
Missouri Ethics Commission; Mariann    *
Tow, in her official capacity as member *
of the Missouri Ethics Commission;      *
Jeremiah W. Nixon, in his official       *
capacity as Missouri Attorney General, *
   *
        Appellees.                      *

_____

Submitted: November 7, 2002

Filed:   March 27, 2003

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

National Right to Life Political Action Committee (NRLPAC), National Right to Life Committee, Inc. (NRLC), and Amarie Natividad brought this action against the Missouri Ethics Commission (MEC) challenging the constitutionality of several Missouri election laws.  The parties filed cross-motions for summary judgment, and the district court[1] granted MEC's motion with respect to one of NRLPAC and NRLC's claims and dismissed their remaining claims as non-justiciable. NRLPAC and NRLC appeal.  We affirm.

## I.    BACKGROUND

NRLC is a national, not-for-profit corporation incorporated in Washington, D.C.  Its main objectives are to educate the public on abortion-related issues and to support policies that are consistent with its pro-life agenda.  It advances these objectives primarily by accepting donations and distributing literature and other communications, most commonly in the form of "voter guides" that identify candidates by their positions on abortion-related issues.  Although NRLC occasionally donates money directly to candidates or candidate committees, expressly advocating the election or defeat of identified candidates is not its major purpose.

___

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

NRLC established NRLPAC, an internal political action committee, to make independent expenditures for express advocacy in elections.

Prior to October 16, 2000, when then-Missouri Governor and United States Senate candidate Mel Carnahan was killed in an airplane crash, neither NRLC or NRLPAC intended to make expenditures with respect to any Missouri race in the November 7, 2000, election. Rather, NRLPAC had been vigorously advocating Carnahan's defeat in his race against then-incumbent Senator John Ashcroft. As a result of Carnahan's death, NRLPAC decided to shift its focus and efforts toward the Missouri gubernatorial race between Jim Talent and Bob Holden. NRLPAC immediately printed new political communications expressly advocating Jim Talent's election in that race. It planned to distribute these communications beginning October 17, 2000, twenty-one days before the election.

NRLPAC notified the MEC of its intention to make expenditures in the Missouri election and, according to NRLPAC, was told by an MEC staff member named Mike that the kind of expenditures NRLPAC was proposing would violate Missouri law. Specifically, Mike explained that two separate Missouri statutes prohibited committees like NRLPAC from making any independent expenditures respecting a Missouri election within thirty days of the election.[2] After its own examination of Missouri election law, NRLPAC concluded that, indeed, it could not make its planned expenditures. NRLC then considered whether the Missouri statutes would also prohibit it, NRLC as opposed to NRLPAC, from making its own expenditures in the election. Concluding that the thirty-day limitation would also

---

[2]The district court correctly noted that Missouri Revised Statutes sections 130.049 and 130.011 are the only two election statutes with thirty-day limits and are, therefore, most plausibly the statutes to which Mike was referring. Nat'l Right to Life Political Action Comm. v. Lamb, 202 F. Supp. 2d 995, 1003-04 (W.D. Mo. 2002). Since these are also two of the Missouri laws that NRLPAC and NRLC are challenging, we will discuss them in greater detail later.

preclude it from making independent expenditures, NRLC decided to omit any language expressly advocating the election or defeat of candidates in the gubernatorial race. In effect, NRLC converted its "express ads" into "issue ads."[3]

NRLC was still concerned, however, that the Missouri election laws did not appear to follow the bright-line distinction between express advocacy and issue advocacy as required by the United States Supreme Court in Buckley v. Valeo, 424 U.S. 1, 44 (1976). NRLC's lawyer sought guidance from Michael Reid, Director of Compliance at MEC, by submitting for Reid's review hypothetical statements that resembled the kind of political communications his clients "usually engage in."[4] He asked Reid to indicate whether such statements would subject NRLC to regulation under the Missouri statutes at issue and to approve a specific legal interpretation of Missouri law regarding the Buckley bright-line test. Reid declined to issue an official ruling, stating that "[t]he Commission determines on a case by case basis whether or not advertisements or speech urges voters to vote for or against an issue or a candidate. . . . It would be inappropriate for me to make any qualified statements concerning your communications."

---

[3]Independent expenditures are those for political speech that contain express advocacy, made without candidate coordination or consultation. See Iowa Right to Life Comm., Inc. v. Williams, 187 F.3d 963, 968 (8th Cir. 1999). Express advocacy is political speech that uses express or explicit terms advocating the election or defeat of clearly identified candidates for public office. See id. at 969-70. Issue advocacy, therefore, includes all political speech that is not express advocacy.

[4]His October 27, 2000, letter to Reid included the following examples: "Bob Holden is running for Governor of the State of Missouri," "Bob Holden believes that a woman's right to choose should always prevail over an unborn child's right to life," "Let Bob Holden know that Missouri needs leaders who will protect the rights of unborn children." The letter did not indicate whether this group of statements was the actual communication NRLC intended to use.

MEC practices appear, from the record, to support Reid's response. The Commission decides whether to issue official opinions, pursuant to its authority under Missouri Revised Statute section 105.955.16, only by affirmative vote of four members taken in official meetings and has not delegated authority to issue opinions to any staff members, including Reid as the Director of Compliance. Neither NRLC nor NRLPAC has ever sought an official MEC opinion concerning the Missouri election laws at issue in this case. Nor did they seek a temporary restraining order or other relief until they filed this lawsuit on the day of the 2000 election. They challenged several Missouri election laws and sought a declaratory judgment to the effect that the challenged statutes are either unconstitutional on their face or, alternatively, as applied to NRLPAC and NRLC. They also sought a permanent injunction against enforcement of the statutes.

## II.    DISCUSSION

Under Article III of the Constitution, federal courts "may adjudicate only actual, ongoing cases or controversies." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). Thus, the Supreme Court has developed justiciability doctrines that "go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so." Renne v. Geary, 501 U.S. 312, 316 (1991). In reviewing the application of those doctrines, "[w]e presume that federal courts lack jurisdiction 'unless the contrary appears affirmatively from the record,'" and "'[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.'" Id. (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 546, 546 n.8 (1986)).

## A. Standing - Counts Two, Three, Four

In Counts Two, Three, and Four of their complaint, NRLPAC and NRLC request declaratory and injunctive relief from enforcement of Missouri Revised Statute section 130.049.[5] In Count Two they challenge that section's prohibition on expenditures by "out-of-state committees" within thirty days of an election. In Count Three they allege that section 130.049's requirement that out-of-state committees file disclosure reports fourteen days before making expenditures or contributions is also unconstitutional. In Count Four they point to the statute's distinct treatment of committees domiciled outside of Missouri as a violation of the Privileges and Immunities Clause. The district court found that NRLPAC and NRLC lacked standing to challenge section 130.049. We agree.

---

[5]The relevant portion of section 130.049 states:

An out-of-state committee which according to the provisions of subsection 10 of section 130.021 is not required to file a statement of organization and is not required to file the full disclosure reports required by section 130.041 shall file reports with the Missouri ethics commission according to the provisions of such sections if the committee makes contributions or expenditures in support of or in opposition to candidates or ballot measures in this state in any election covered by this chapter or makes contributions to any committee domiciled in this state. *An initial report shall be filed no later than fourteen days prior to the date such out-of-state committee first makes a contribution or expenditure in this state. . . . The contributions or expenditures shall be made no later than thirty days prior to the election.*

Mo. Rev. Stat. § 130.049 (emphasis added).

In order to prove standing, a plaintiff must demonstrate: (1) an actual injury that is concrete and particularized and not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood, and not a mere speculative possibility, that the plaintiff's injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). NRLPAC and NRLC allege that section 130.049's time restrictions and distinct treatment of non-Missouri residents violate the First Amendment and the Privileges and Immunities Clause in Article IV, Section 2 of the Constitution. We find, however, that these allegations do not assert an actual injury but are instead purely conjectural or hypothetical.

Section 130.049 imposes certain deadlines and filing requirements on out-of-state committees only when those committees are not subject to the filing and other requirements in section 130.021.10.[6] Thus, section 130.049 does not apply to committees that receive at least twenty percent of their total contributions from Missouri residents or that spend more than $1,500 on Missouri elections in a calendar year. Contributions aside, NRLPAC and NRLC have not alleged that they intended to spend less than $1,500 on communications for the 2000 election and, indeed, the

_____

[6]Section 130.021.10 provides:

A committee domiciled outside this state shall be required to file a statement of organization and appoint a treasurer residing in this state and open an account in a depository within this state; provided that either of the following conditions prevails: (1) The aggregate of all contributions received from persons domiciled in this state exceeds twenty percent in total dollar amount of all funds received by the committee in the preceding twelve months; or (2) The aggregate of all contributions and expenditures made to support or oppose candidates and ballot measures in this state *exceeds one thousand five hundred dollars in the current calendar year*.

Mo. Rev. Stat. § 130.021.10 (emphasis added).

-7-

record quite clearly indicates that NRLPAC's identified expenditures would have exceeded $1,500. The plain language of section 130.049 excludes NRLPAC and NRLC from its purview. The evidence offered by NRLPAC and NRLC to demonstrate that the MEC enforces section 130.049 against committees that spend more than $1,500, contrary to the statute's plain meaning, is unpersuasive and, at best, amounts to evidence of a conjectural or hypothetical injury. We agree with the district court's conclusion that the term "out-of-state committee" as used in section 130.049 "is a statutory term that includes only 'committees' that spend less than $1,500 in a Missouri election and are not domiciled in Missouri." Nat'l Right to Life Political Action Comm. v. Lamb, 202 F. Supp. 2d 995, 1004 (W.D. Mo. 2002). Thus, section 130.049 does not apply to NRLPAC or NRLC and, accordingly, we affirm the dismissal of Counts Two, Three, and Four.

### B. Mootness - Counts One, Five, Six

In Count One of their complaint, NRLPAC and NRLC allege that Missouri Revised Statute section 130.011(10) is an unconstitutional prior restraint on political speech because it requires a "continuing committee" to be formed and registered at least thirty days before an election in order to make expenditures. In Count Five, they allege that, along with a battery of other statutes, section 130.011(10) unconstitutionally fails, in its PAC-like regulation of political organizations, to differentiate between groups whose major purpose is express advocacy and candidate contributions and those who engage in such activities only secondarily. And in Count Six, NRLPAC and NRLC claim that section 130.011(10) is facially unconstitutional because it does not follow the Buckley bright-line test for distinguishing express advocacy from issue advocacy. There is no dispute over NRLPAC's standing to challenge section 130.011(10); NRLPAC clearly falls within the statute's definition

of a "continuing committee."[7] But the district court dismissed NRLPAC and NRLC's challenges to section 130.011(10) as moot. Although we disagree with the district court's mootness analysis, particularly with respect to Count One, we believe that Counts One, Five and Six are presently nonjusticiable on ripeness grounds and that a brief discussion of the mootness issue is sufficient at this time.

The Supreme Court has repeatedly described the mootness doctrine as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout it existence (mootness)." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (citations omitted). Thus, "[w]e do not have jurisdiction over cases in which 'due to the passage of time or a change in circumstance, the issues presented . . . will no longer be 'live' or the parties will no longer have a legally cognizable interest in the outcome of the litigation.'" Van Bergen v. Minnesota, 59 F.3d 1541, 1546 (8th Cir. 1995) (quoting Arkansas AFL-CIO v. FCC, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc)). There is, however, an exception to the mootness doctrine for cases that are "capable of repetition yet

---

[7]Section 130.011(10) defines a "continuing committee" as

a committee of continuing existence which is not formed, controlled or directed by a candidate, and is a committee other than a candidate committee or campaign committee, whose primary or incidental purpose is to receive contributions or make expenditures to influence or attempt to influence the action of voters whether or not a particular candidate or candidates or a particular ballot measure or measures to be supported or opposed has been determined at the time the committee is required to file any statement or report pursuant to the provisions of the chapter. . . . Such committee shall be formed no later than thirty days prior to the election for which the committee receives contributions or makes expenditures.

Mo. Rev. Stat. § 130.011(10).

evading review." Id. at 1546-47. This exception will rescue an otherwise moot claim if (1) the challenged conduct is of too short a duration to be litigated fully prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. Id. at 1547. Election issues are "among those most frequently saved from mootness by this exception." Id.

NRLPAC and NRLC's section 130.011(10) challenges became moot after the 2000 election,[8] and the district court declined to apply the exception for cases that are capable of repetition yet evading review. It grounded its holding on "the uniqueness of the circumstances surrounding the 2000 election" and concluded that "any similar dispute between the parties is highly unlikely to recur." Lamb, 202 F. Supp. 2d at 1005. The district court focused mainly on the unlikelihood that a candidate's untimely death will again coincide with NRLC's involvement in an election, calling the chances of such a recurrence "tenuous at best." Id. We are reluctant to draw such a narrow scope of probability. While, admittedly, the district court issued its opinion nearly six months before the airplane-crash-related death of Minnesota Senator Paul Wellstone during his Senate re-election bid in October 2002,[9] the second such occurrence in as many years gives us pause. Also, we think the chances are much

---

[8]The district court stated that, "[a]s a practical matter, this matter was moot on the day the Complaint was filed, which was the day of the election," and opined further that, "[f]iling suit on the day of the election was at best an attempt to comply in form with the Supreme Court's admonition in Renne v. Geary." Lamb, 202 F. Supp. 2d at 1005. The admonition to which the court was referring is that, "[w]hile the mootness exception for disputes capable of repetition yet evading review has been applied in the election context, that doctrine will not revive a dispute which became moot before the action commenced." Renne, 501 U.S. at 320 (internal citation omitted). Under the particularly compressed time frame of this case, however, we are satisfied that formal compliance with Renne was sufficient to advance the section 130.011(10) claims to analysis under the mootness exception.

[9]Senator Wellstone's tragic accident was widely reported in the *Minnesota Star Tribune*, and in newspapers throughout the country, on October 26, 2002.

better than "tenuous" that the death of a candidate within thirty days of an election will impact the abortion debate in that race and will therefore divert the attention of NRLC. Most importantly, we believe that any number of events, other than the death of a candidate, might cause NRLC to become involved in a state race within thirty days of an election. For instance, polls might reveal a closer race than expected and attract NRLC's resources. New information or effective advertising could drastically alter public opinion in the weeks before an election. Trends in other races could elevate the importance of races with less clear outcomes. Viewed together, these and other scenarios make it reasonably likely, in our view, that NRLC will again find itself in conflict with the thirty-day limitation in section 130.011(10). This satisfies the "capable of repetition" prong of the mootness exception.

We also question the district court's conclusion that future recurrences of this dispute will not evade review. It gave much weight to NRLPAC and NRLC's failure to seek a temporary restraining order or other expedited review, citing our cases declining to apply the mootness exception where procedures for expedited review were available. See Midwest Farmworker Employment and Training, Inc. v. Dep't of Labor, 200 F.3d 1198, 1201 (8th Cir. 2000); Minnesota Humane Soc'y v. Clark, 184 F.3d 795, 797 (8th Cir. 1999); Missouri ex rel. Nixon v. Craig, 163 F.3d 482, 485 (8th Cir. 1998). But those cases did not involve elections and, more importantly, did not address disputes whose duration was, by definition, limited to the thirty-day period before an election. Election cases are inherently partisan, courts are reluctant to hastily decide their outcomes, and thus, as a practical matter, we doubt that even expedited procedures would have "resolved" this case in time for NRLC to have effectively participated in the 2000 election.

So, although we question the district court's application of the mootness exception, we agree, as already stated, that the district court's final disposition can be reached on ripeness grounds. Accordingly, we now turn to that analysis.

### C.     Ripeness - Counts One, Five, Six

The basic rationale of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). To that end, courts deciding whether a dispute is ripe should consider (1) the hardship to the plaintiff caused by delayed review; (2) the extent to which judicial intervention would interfere with administrative action; and (3) whether the court would benefit from further factual development. Ohio Forestry Assoc. v. Sierra Club, 523 U.S. 726, 733 (1998). Viewed in light of these considerations, NRLPAC and NRLC's section 130.011(10) claims are, in our view, too immature and unfocused to be ripe for judicial review at this time.

In Count One, NRLPAC and NRLC allege that section 130.011(10) amounts to an unconstitutional prior restraint on political speech by requiring a "continuing committee" to register and file disclosure reports at least thirty days before an election. But they have not alleged with any degree of specificity the constitutional threat they would face for failing to register before the thirty-day cutoff. Section 130.011(10) does not, on its face, limit issue or express advocacy within thirty days of an election; it merely states a registration deadline. And despite NRLPAC and NRLC's allegations that someone at the MEC named Mike told them they would not be permitted to make any contribution within thirty days of the election, then-MEC President Charles Lamb filed an affidavit that paints a different picture:

In enforcing [section 130.011(10)], the Commission has not refused to accept a statement of organization filed by a continuing committee after the thirtieth day before an election, has not otherwise refused to recognize such a continuing committee's existence or registration, and has not taken any action to prevent a continuing committee from making or receiving contributions or expenditures in connection with an election if the committee has not filed a statement of organization by the thirtieth day prior to that election. The Commission has found that continuing committees that fail to file a statement of organization by the thirtieth day before an election for which they receive contributions or expenditures have violated the deadline set by § 130.011(10) and has entered agreements with treasurers of those committees for the payment of fees pursuant to the Commission's authority under § 105.961.4(6), Mo. Rev. Stat.

J.A. at 177-78. The district court correctly pointed out that "[h]ow the MEC would handle the 'fee' for failing to file prior to the 30 day window would have a significant impact" on our constitutional scrutiny of section 130.011(10). Lamb, 202 F. Supp. 2d at 1009. Neither NRLPAC nor NRLC have presented evidence on the issue of fees, nor have they sought clarification under section 105.955.16, the Missouri statute authorizing the MEC to issue advisory opinions. We think that these issues would benefit substantially from further factual development. And we agree with the district court that delayed review of Count One will work no greater hardship to NRLPAC and NRLC than the completion of the 2000 election already has. If indeed, as they have alleged, they intend to participate *ad infinitum* in future Missouri state elections, they certainly have an incentive to seek an MEC opinion and gather evidence regarding the enforcement of section 130.011(10). They may, in fact, discover that no real threat of enforcement exists at all. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985)).

-13-

The same reasoning applies to Counts Five and Six. In Count Five, NRLC alleges that numerous Missouri election laws,[10] including section 130.011(10), violate the "major purpose test" established in FEC v. Massachusetts Citizens for Life, Inc., 479 U.S. 238 (1986). That test, according to NRLC, prohibits governments from imposing PAC-like registration and reporting requirements on organizations who do not have campaign activity as their major purpose. See id. at 262-63. NRLC contends that the challenged statutes fail, on their face, to differentiate between political committees like NRLPAC and organizations like NRLC. Without repeating the district court's analysis, we find its conclusions persuasive on this issue. We agree that the challenged statutes are ambiguous in scope, but we also think they are susceptible to limiting constructions. See Lamb, 202 F. Supp. 2d at 1012. More importantly, however, we find that NRLC has not sufficiently focused its claim. It did not make independent expenditures, was never told it would be treated as a "continuing committee" and, thus, was never threatened with enforcement of the PAC-like regulations. It never sought a temporary restraining order. Nor has it sought guidance from the MEC. We think a district court could more appropriately address these claims if it had some indication as to how Missouri interprets and enforces its own statutes. The district court aptly observed: "If the case or controversy doctrine is to have any vitality in the context of campaign finance, it is better to wait for a concrete dispute to arise before tackling these challenging and diverse statutory construction questions." Id. at 1017. We agree.

We also find Count Six to be unripe. NRLPAC and NRLC allege that section 130.011(10) is facially unconstitutional because it does not adhere to the bright-line test for express advocacy in Buckley. In that case the Supreme Court held that a similar statute "must be construed to apply only to expenditures for communications that in express terms advocate the election or defeat of a clearly identified candidate

_____

[10]The complaint lists sections 130.011(10), 103.021, 130.031, 130.032, 130.036, 130.041, 130.046, 130.049, 130.050, 130.058, 130.072, and 130.081.

-14-

for federal office." 424 U.S. at 44. Again, we agree with the district court's observation: "The statute in question is nearly 25 years old and the Commission has never ordered a group to make disclosures that are inconsistent with the bright line test articulated in <u>Buckley</u>. Moreover, there is nothing on the face of the statute to prevent it from being construed and enforced in a constitutional manner." <u>Lamb</u>, 202 F. Supp. 2d at 1011-12. That assessment is supported by the record. Without additional factual development, we cannot be sure there is even a dispute here to resolve. And since it will facilitate more efficient and focused review of their claims, delayed review will not inflict unreasonable hardship on NRLPAC and NRLC.

### D. Resident Treasurer Requirement - Count Seven

Finally, in Count Seven, NRLPAC seeks to invalidate section 130.021.10, which requires an out-of-state committee to appoint a Missouri resident as treasurer if the committee intends to make expenditures in excess of $1,500. Section 130.021.10 clearly applies to NRLPAC and, while there has been no threat of enforcement, there is no ambiguity as to whether the statute would burden NRLPAC's constitutional right of association. Thus, standing is established and the ripeness hurdle overcome. But we agree with the district court's conclusion that, even under strict scrutiny,[11] section 130.021.10 is a permissible restriction because it is narrowly tailored to further Missouri's compelling interest in "preserving the integrity of the electoral process" by ensuring "that each committee provides an individual who is accountable for compliance with the provisions of the disclosure law and can be easily reached by judicial process." <u>Lamb</u>, 202 F. Supp. 2d at 1019 (citing <u>Eu v. San Francisco County Democratic Cent. Comm.</u>, 489 U.S. 214, 231 (1989)). According

---

[11]As the district court has adequately explained, state election laws that severely restrict the right of association by attempting to regulate the internal affairs of political organizations must be narrowly drawn to serve a compelling state interest. <u>Burdick v. Takushi</u>, 504 U.S. 428, 434 (1992).

to the Supreme Court, "[t]oward that end, a State may enact laws that interfere with . . . internal affairs when necessary to ensure that elections are fair and honest." Eu, 489 U.S. at 231.

We have upheld state residency requirements in the election context before. Initiative & Referendum Inst. v. Jaegar, 241 F.3d 614, 615 (8th Cir. 2001) (residency requirement for circulators of initiative petitions). And Missouri's treasurer residency requirement, while burdensome, "does not interfere with NRLPAC's internal affairs to the same extent" as election-related restrictions invalidated in other cases. Lamb, 202 F. Supp. 2d at 1019 (discussing Eu, 489 U.S. at 218 (law dictated the size and composition of political party's state central committee, governed the selection and removal of committee members, fixed the maximum term of office for the committee chair, and required the chair to rotate between residents of northern and southern California) and Republican Party of Ark. v. Faulkner County, 49 F.3d 1289, 1291 (8th Cir. 1995) (law required political party seeking to have its candidate on the general election ballot to finance and conduct its own primary election)). We conclude that the resident treasurer requirement in section 130.021.10 is a constitutional restriction on association.

## III. CONCLUSION

We find that NRLPAC and NRLC have failed, in Counts One through Six, to present a justiciable case or controversy within the limits of our authority under Article III. With respect to Count Seven, we hold that Missouri's resident treasurer requirement is constitutional. Accordingly, we affirm the district court's grant of summary judgment in favor of the MEC and order of dismissal.[12]

---

[12]The author of this opinion shares the several concerns of NRLPAC and NRLC about the Missouri election laws at issue and might, in a proper case, find at least some of them to be unconstitutional.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.