# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-2429

_____

POET Biorefining - Hudson, LLC, formerly known as Sioux River Ethanol, LLC

*Petitioner*

v.

United States Environmental Protection Agency; Andrew Wheeler, Administrator

*Respondent*s

_____

Petition for Review of an Order of the
Environmental Protection Administration

_____

Submitted: June 16, 2020
Filed: August 21, 2020
[Published]

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

PER CURIAM.

This case arises on POET Biorefining, LLC – Hudson's petition to review a letter it received from the Assistant Administrator of EPA. POET contends that the letter embodies EPA's final decision to deny its March 6, 2018 application to generate D3 Renewable Identification Numbers (RINs) by producing cellulosic ethanol from corn-kernel fiber at its facility in Hudson, South Dakota. After filing

its petition for review, POET withdrew its 2018 application. POET has since filed a new, non-identical application to generate D3 RINs at its Hudson facility, which is currently pending for EPA's review. We conclude that the controversy regarding EPA's alleged denial of POET's 2018 application is moot and dismiss the petition.

**I.**

In 2005 and 2007, Congress amended the Clean Air Act to establish the Renewable Fuel Standards (RFS) program. 42 U.S.C. § 7545(o). The RFS program identifies four categories of renewable fuel—cellulosic biofuel, biomass-based diesel, advanced biofuel, and total renewable fuel—and specifies an annual volume of each type of renewable fuel that refiners and importers of gasoline must introduce into the United States each year. Id. § 7545(o)(2)(B)(i).

To implement the RFS program, EPA issues RINs for each gallon of renewable fuel that is produced or imported for use in the United States. See 40 C.F.R. § 80.1426(a). Refiners and importers can satisfy their renewable-fuel obligations by generating RINs or by obtaining them on the secondary market. See 42 U.S.C. § 7545(o)(5)(B). Each RIN is assigned a "D code" with a value identifying the type of renewable-fuel obligation it can be used to satisfy. See 40 C.F.R. § 80.1425(g). RINs assigned a "D6" code can only be used to satisfy the total renewable-fuel obligation, whereas RINs assigned a "D3" code can also be used to satisfy the advanced and cellulosic-biofuel obligations. See id. § 80.1426(f). As a result, EPA estimates that D3 RINs "are typically 3 to 4 times more valuable" than D6 RINs.

Since 2013, POET's Hudson facility has been registered to generate D6 RINs by producing conventional ethanol from the inner starch of corn kernels. In 2014, EPA issued a final rule recognizing a new pathway for producers to generate D3 RINs by producing cellulosic ethanol from the outer fiber of corn kernels. On March 6,

2018, POET submitted an application to generate D3 RINs by producing cellulosic ethanol from corn-kernel fiber at its Hudson facility.

EPA expressed technical concerns about POET's application, and POET and EPA engaged in a back-and-forth discussion over the course of the next year. Following a meeting between POET and the Administrator of EPA, EPA issued a letter on May 7, 2019, "to provide an explanation of [its] interpretation and application of [its] regulatory requirements to this matter." The letter states that POET's application "has not resolved EPA's overall technical concerns" and articulates "criteria for the type of analysis and demonstrations that EPA believes would be an appropriate basis for registration under the program." The letter notes that EPA intends to "continue evaluating" POET's application when new materials become available to facilitate EPA's review. EPA did not reject POET's application in its electronic system like it ordinarily does when denying a registration request.

On July 5, 2019, POET filed this petition to review EPA's letter. POET argues that (1) the letter was a final agency action denying its 2018 application; (2) the criteria imposed by the letter are contrary to law because they contravene EPA's 2014 final rule; and (3) the criteria imposed by the letter are arbitrary and capricious because they cannot currently be satisfied and are inconsistent with the evidence submitted with POET's 2018 application. EPA contends that the letter was not a final agency action, but was instead one part of an ongoing conversation about EPA's technical concerns. Alternatively, EPA defends the letter on the merits.

On July 8, 2019, POET withdrew its 2018 application. 23 days later, POET emailed EPA a letter explaining that it took this "administrative step" to update an unrelated aspect of its registration to generate D6 RINs for conventional ethanol. POET explained that it was necessary to withdraw its application in its entirety because EPA's electronic system does not allow a facility to have two registration

requests in the system at the same time. POET advised that this action "should not be considered a voluntary withdrawal of the Hudson Registration Application."

On April 10, 2020, POET submitted a new application to generate D3 RINs for producing cellulosic ethanol at its Hudson facility. POET represents that its new application is "identical in all relevant respects" to its 2018 application. By this, POET means that the new application does not comply with the criteria articulated in EPA's letter. However, POET notes that the 2020 application contains a revised method for measuring cellulosic content as well as "additional data to address technical concerns expressed by EPA." The application contains approximately 375 pages, and EPA "has not fully reviewed the engineering review and supporting information" at this time.

## II.

"Article III of the Constitution only allows federal courts to adjudicate actual, ongoing cases or controversies." Potter v. Norwest Mortg., Inc., 329 F.3d 608, 611 (8th Cir. 2003). This requirement "denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantial controversies admitting of specific relief through a decree of a conclusive character." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990) (cleaned up). A case fails to satisfy the case-or-controversy requirement when "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit" and makes it "impossible for a court to grant any effectual relief." Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016) (cleaned up). "When an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." Potter, 329 F.3d at 611.

Although the parties have not argued this case is moot, "we nevertheless are constrained from addressing any issues presented by moot cases." South Dakota v.

-4-

Hazen, 914 F.2d 147, 149 (8th Cir. 1990).  Because "the mootness question is jurisdictional," "[i]t is of no significance that the parties may desire a resolution of the issues a moot case presents." Id.  "The parties may not by stipulation invoke the judicial power of the United States to decide questions over which this Court has no jurisdiction." Id. (cleaned up).

We conclude that POET's withdrawal of its 2018 application and submission of its non-identical 2020 application have mooted this action.  POET concedes that "this Court could not now order EPA to *grant* the March 2018 application."  This is because EPA cannot grant an application that has been withdrawn.   For this same reason, we cannot remand this action with instructions that EPA review the withdrawn 2018 application in a particular manner.

Nonetheless, POET argues that we could grant effectual relief by vacating EPA's alleged denial of the withdrawn application and including language in our opinion that "will force EPA to evaluate Hudson's pending registration application under the appropriate standard."  But any registration of the Hudson facility will not be pursuant to the 2018 application we have been asked to review.  And any dispute regarding POET's pending application is not currently before us.  Opining about the standards EPA should apply to POET's pending application would amount to an advisory opinion, which we have no jurisdiction to issue.  See Preiser v. Newkirk, 422 U.S. 395, 401 (1975).

Instead, we leave POET's pending application to the usual processes of administrative and judicial review.   EPA must act on the application without unreasonable delay.  See 42 U.S.C. § 7604(a).  If POET is unsatisfied with EPA's determination, it may then seek judicial review.  42 U.S.C. § 7607(b).

The petition is dismissed.

_____