# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2542

_____

Governor Kristi Noem, in her official capacity as the Governor of South Dakota; South Dakota

*Plaintiffs - Appellants*

v.

Deb Haaland, in her official capacity as United States Secretary of the Interior; Shannon A. Estenoz, in her official capacity as Principal Deputy Assistant Secretary of the Interior for Fish and Wildlife and Parks; Shawn Benge, in his official capacity as acting Director and Deputy Director of Operations of the National Park Service; Herbert Frost, in his official capacity as National Park Service Director of the Midwest Region

*Defendants - Appellees*

Cheyenne River Sioux Tribe; Steve Vance

*Intervenor Defendants - Appellees*

------------------------------

State of Kansas; State of Alabama; State of Arizona; State of Arkansas; State of Indiana; State of Louisiana; State of Mississippi; State of Missouri; State of Montana; State of Nebraska; State of Ohio; State of Oklahoma; State of South Carolina; State of Tennessee; State of Texas; State of West Virginia

*Amici on Behalf of Appellant(s)*

National Parks Conservation Association

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of South Dakota - Central
_____

Submitted: January 12, 2022
Resubmitted: February 2, 2022
Filed: July 27, 2022
_____

Before BENTON, SHEPHERD, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

The Fourth of July 2021 was a disappointment for South Dakota, after the National Park Service denied a permit for a fireworks show at Mount Rushmore. South Dakota challenged both the denial and the constitutionality of the permitting regime in federal court. We cannot change what happened last year, and South Dakota has not shown that it would actually benefit from the elimination of the permitting regime. So we vacate the district court's judgment and dismiss the appeal.

I.

For eleven years, Mount Rushmore played host to Fourth of July fireworks shows. Unfortunately, visitor-safety and fire-danger concerns put the practice on hold. A decade later, the Park Service changed course and granted a permit that said it was for the "year 2020 and [did] not mean an automatic renewal of the event in the future."

The following year, South Dakota tried again. This time, the Park Service denied the request, citing COVID-19 risks, concerns about tribal relationships,

effects on other Mount Rushmore visitors, a then-in-progress construction project, and ongoing monitoring of water-contamination and wildfire risks.

The denial led South Dakota to sue the agency on two grounds. The first was that the decision itself was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). The second was that the permitting regime violates the nondelegation doctrine. *See* U.S. Const. art. 1, § 1, cl. 1 (vesting in Congress "[a]ll legislative Powers herein granted").

South Dakota hoped for a different decision, so it requested both injunctive and declaratory relief. It sought an injunction "ordering [the Park Service] to issue the requested permit." And it requested a declaration that the denial was arbitrary and capricious and that "the statutes granting [the Park Service] permitting authority are unconstitutional for want of an intelligible principle."

That same day, South Dakota asked for a preliminary injunction. The district court denied one, largely because there had been no showing that South Dakota was likely to succeed on the merits. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Five weeks later, South Dakota asked the court to convert its order denying a preliminary injunction into a final judgment. Despite having doubts about whether the continuing dispute over the permit denial was still live (given that the Fourth of July had already passed), the court went ahead and granted the request because the nondelegation issue presented a "non-moot appealable issue."

## II.

We begin with the part of the case that the district court thought was moot: the arbitrary-and-capricious challenge. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks

omitted). We review jurisdictional questions like this one de novo. *See Gonzalez v. United States*, 23 F.4th 788, 789 (8th Cir. 2022).

In entering final judgment following the Fourth of July last year, the district court correctly observed that the "issues surrounding the denial of the permit for 2021 are moot." Time machines aside, to now order the Park Service to reconsider its decision to deny a permit for an event more than a year in the past would be the very definition of "[in]effectual relief." *See POET Biorefining – Hudson, LLC v. EPA*, 971 F.3d 802, 805 (8th Cir. 2020) (per curiam). No matter what we decide, South Dakota cannot hold the event.

Nor is the controversy live because South Dakota will keep trying for a permit. Even assuming that this deny-and-sue cycle is destined to repeat itself, nothing we say today can turn back the clock to 2021. *See id.* at 805–06. As we said just two years ago in a nearly identical scenario, "[o]pining about the standards [an agency] should apply to [an out-of-date] application would amount to an advisory opinion." *Id.* at 806.

Not so, South Dakota argues, because this is a fast-burning challenge that is capable of repetition yet evading review. *See Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (explaining that such cases fall "within [an] established exception to mootness"). An otherwise-moot case is still justiciable if "(1) there [is] a reasonable expectation that the same complaining party will be subjected to the same action again[;] and (2) the challenged action [is] of a duration too short to be fully litigated before becoming moot." *Iowa Prot. & Advoc. Servs. v. Tanager, Inc.*, 427 F.3d 541, 544 (8th Cir. 2005). This limited exception applies only if South Dakota can "show[] the presence of both requirements." *Abdurrahman v. Dayton*, 903 F.3d 813, 817 (8th Cir. 2018).

Although we are skeptical that South Dakota's arbitrary-and-capricious challenge can satisfy either one, the subject-to-the-same-action requirement poses an obvious difficulty. Even though South Dakota has established a "reasonable

-4-

expectation" that it will regularly apply for a fireworks permit, the circumstances are likely to be different each time. *See Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 485 (8th Cir. 1998) (explaining that it is not enough that the plaintiffs "may be parties to the same sort of dispute in the future" (brackets and citation omitted)). Last year, the barriers were the then-current state of COVID-19, an ongoing construction project, tribal opposition around a yet-to-be-completed survey, and fire and water-contamination risks. In the future, it may be some combination of these reasons, or none of them at all.

In arbitrary-and-capricious review, even small factual differences can matter. Reviewing agency action requires us to evaluate the "*contemporaneous* explanation in light of the *existing* administrative record." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019) (emphases added). Keeping in mind that agency action is typically a snapshot in time, the "*same* controversy" will recur only if: (1) the Park Service again denies a fireworks permit; (2) the administrative record is "materially similar"; and (3) the Park Service does not change its reasoning. *Wis. Right to Life*, 551 U.S. at 463 (emphasis added); *see Craig*, 163 F.3d at 485. Far from convincing us that this unlikely scenario is likely to repeat itself, South Dakota has not even suggested it might. *See Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) (explaining that the "party invoking the exception . . . bears the burden of demonstrating that it applies").

The bottom line is that we cannot change what happened last year, and South Dakota has not demonstrated that deciding this otherwise moot case will impact any future permitting decision. Any controversy has, in other words, fizzled out.

## III.

The nondelegation challenge presents a closer call, but it too suffers from a jurisdictional flaw. This time, however, the problem is standing, not mootness.

A close cousin of mootness, standing has three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The first is "injury in fact," which consists of the "invasion of a legally protected interest." *Id.* Traceability, the second element, requires a "causal connection between the injury and the conduct complained of." *Id.* And the third, redressability, is all about the "likelihood that the requested relief will redress the *alleged* injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (emphasis added).

The problem for South Dakota is redressability. The declaration it seeks is that "the statutes granting [the Park Service] permitting authority are unconstitutional for want of an intelligible principle." But it cannot identify how the "requested relief will redress [its] alleged injury," which is not being able to hold a Fourth of July fireworks show at Mount Rushmore. *Id*.

The reason lies in the nature of the challenge itself. In many nondelegation cases, an agency is already regulating the party who sues. A power plant wants to emit more chemicals, a pharmaceutical company hopes to release a new drug, or a firm wishes to merge with another. Yet some rule stands in the way. In those types of cases, a favorable decision on a nondelegation challenge will remove the obstacle. In standing terms, the injury is "likely" redressable. *Lujan*, 504 U.S. at 561; *Wieland v. HHS*, 793 F.3d 949, 956 (8th Cir. 2015).

This case is different in an important way. Nobody has a right to shoot off fireworks on someone else's land, whether it be a neighbor; an area business; or as is the case here, a national park. *See Camfield v. United States*, 167 U.S. 518, 524 (1897) ("[T]he [g]overnment has, with respect to its own lands, the rights of an ordinary proprietor, to maintain its possession and to prosecute trespassers."). Each of these situations requires permission, and for a national park, the way to get it is by requesting a permit. *See* 36 C.F.R. § 2.38(b). With no substitute, doing away

with this process will only make it *harder*, not easier, for South Dakota to remedy its claimed injury.[1]

Don't just take our word for it. Despite giving both parties a chance to file supplemental briefs on jurisdiction, South Dakota still cannot explain how giving it the declaratory relief it seeks will make a fireworks show at Mount Rushmore any more "likely." *See Lujan*, 504 U.S. at 561 (stating that "[t]he party invoking federal jurisdiction bears the burden of establishing the[] elements" of standing).

Instead, it argues that this whole discussion is academic because *Seila Law LLC v. Consumer Financial Protection Bureau* lowered the bar for redressability in separation-of-powers cases. 140 S. Ct. 2183 (2020). It points to the following passage: "a litigant challenging governmental action as void on the basis of separation of powers is not required to prove that the [g]overnment's course of action would have been different in a 'counterfactual world' in which the [g]overnment had acted with constitutional authority." *Id.* at 2196 (citation omitted).

The problem with South Dakota's reading is that this passage, and others like it, address *traceability*, not redressability. *See id.* at 2195 (responding to "*amicus*['s] argu[ment] that the demand issued to the petitioner is not 'traceable' to the alleged constitutional defect"). Traceability is about the connection between the "unlawful conduct" and the injury, whereas redressability focuses on the next step in the analysis, which is the link between the injury and the remedy. *See Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (citation omitted). Although the two concepts occasionally overlap, nothing in *Seila Law* suggests that a plaintiff is relieved of the burden of showing that a favorable decision will likely redress its injury. *See California v. Texas*, 141 S. Ct. 2104, 2115–16 (2021).

---

[1]Our holding here is limited based on how South Dakota has characterized its own injury. We do not rule out the possibility that some other type of injury, like having to incur monetary compliance costs or participate in an unconstitutional process, would change the redressability analysis. *Cf. Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021).

South Dakota is right in one respect: this case *is* different. It just so happens to be different in a way that would require an "advisory opinion[]" on an "abstract proposition[] of law," one that will bring South Dakota no closer to remedying its injury. *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 213 (Scalia, J., dissenting) (relying on *Hall*).

IV.

We accordingly vacate the district court's judgment and dismiss the appeal.

———————————————